27 F.3d 567
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael Ray BENSON, Defendant-Appellant
 No. 93-5493.
 United States Court of Appeals, Sixth Circuit.
 May 12, 1994.
 
 Before: MERRITT, Chief Judge; GUY and BOGGS, Circuit Judges.
 MERRITT, Chief Judge.
 
 
 1
 Defendant Michael Benson was convicted by a jury of aiding and abetting in the possession of with intent to distribute cocaine and was sentenced to 24 years and 7 months in prison. In appealing both his conviction and his sentence he raises nine discrete trial and sentencing issues, none of which warrants reversal.
 
 Background
 
 2
 On May 25, 1992, Ricky Richardson, a confidential informant working with the Shelby County Sheriff's Narcotics Squad, called Detective Paul Harvey and told him that he had arranged a purchase of four ounces of cocaine from the defendant for that afternoon in the parking lot of a certain Church's Fried Chicken restaurant in Memphis. The informant told Harvey that the defendant would be driving a 1987 white Nissan Maxima with license plate number ZZG-070. Harvey ran a check on that license and found that it belonged to a 1987 white Nissan Maxima registered to the defendant. Harvey arranged for Detective Floyd Bonner, under cover and wearing a wire, to join with the informant to make the buy. Harvey also briefed a team of officers on the above details.
 
 
 3
 At approximately 1:25 that afternoon, officers observed a white Nissan Maxima with license plate ZZG-070 pull into the Church's parking lot. The driver got out and went to a pay phone. A few minutes later, Bonner and the informant drove up. Both recognized the man at the phone as the defendant. Bonner had the informant get out of his car and approach the defendant. The defendant and the informant got into the Maxima and talked, and then the defendant drove the car around so that the informant could talk to Bonner. Bonner told the informant to get out of the Maxima and come talk to him, and the informant told him that the defendant wanted to do the deal across the street. At Bonner's direction, the informant then went back to the Maxima and tried to talk the defendant into doing the deal at Church's. The defendant then pulled his car around so that he could talk to Bonner, and he told Bonner that "[t]he dope is over across the street at the store with the dude by the pay phone." Bonner refused to go across the street but they agreed that the informant would go across and check out the drugs.
 
 
 4
 The man at the pay phone across the street was Cleothra Benson, the defendant's uncle. The informant walked across the street and talked to the uncle, and the two of them walked to a Texaco parking lot also across the street. In the meantime, Bonner and the defendant continued to talk. The defendant told Bonner that he wouldn't touch "the dope" and that everything was "straight." The defendant also asked Bonner if he had counted the money, at which point Bonner showed the defendant the $5,600 he had brought to make the buy.
 
 
 5
 At this point, the defendant drove across the street to the Texaco lot and talked to his uncle and the informant. The informant and the uncle then came back across the street and got into Bonner's car. The uncle handed a plastic bag to Bonner and got out of the car. Bonner asked the uncle if he wanted the money, and the uncle got back into the car and told Bonner that he thought the defendant already had the money.
 
 
 6
 Bonner then gave the "take down" signal. Officers arrested the uncle, but the defendant, who had remained across the street, sped off in his Maxima. He was later found and arrested.
 
 
 7
 The plastic bag contained roughly 101 grams of cocaine. The bag was never dusted for fingerprints, and no lineup or photo ID was done.
 
 
 8
 Cleothra Benson pled guilty and agreed to testify against his nephew.
 
 
 9
 Later in 1992, a grand jury charged the defendant with one count of aiding and abetting in the possession of with intent to distribute approximately 101 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1) and 18 U.S.C. Sec. 2. The defendant pled not guilty. After a one-day trial, the jury found the defendant guilty as charged. On August 19, 1992, the court denied the defendant's motion for a new trial.
 
 Sufficiency of the Evidence
 
 10
 We recite these events in detail because the defendant argues that the evidence in the case was insufficient to support the jury's verdict of guilty. He asserts that the evidence indicates that his uncle Cleothra and the confidential informant were the guilty parties, saying that he neither handled the drugs nor asked for or took the money. The defendant put on no defense case.
 
 
 11
 This is not a close question. There was more than enough evidence to tie the defendant to the drugs and the deal. Two things particularly stand out. First, the uncle testified that the defendant ran the deal, recruited him to help, and gave him the drugs. The uncle also identified the bag of cocaine. Second, officers testified to the facts recited in the "Background" section above. The defendant was at the scene, in the car and with the license plate as predicted by the confidential informant. The defendant spoke to the informant and to Detective Bonner in ways which the jury could easily have construed as in furtherance of the drug deal. Many of these words were captured on the wire.
 
 
 12
 A rational trier of facts, reviewing this evidence in the light most favorable to the prosecution, could easily have found the essential elements of the crime charged beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); U.S. v. Evans, 883 F.2d 496, 501 (6th Cir.1989).
 
 Motion for Acquittal
 
 13
 At the close of the government's case, the defendant moved for a Judgment of Acquittal. The court properly denied the motion, because of the sufficiency of the evidence.
 
 Hearsay Testimony
 
 14
 The confidential informant did not testify at trial. Detective Harvey testified as to parts of the original conversation he had with the informant, which caused Harvey to set up the sting in this case. At trial, the defendant objected to this testimony as hearsay, citing Fed.R.Evid. 803, but the court allowed it as giving background and explaining why the police did what they did. The court instructed the jury not to take the testimony for the truth of the informant's reported assertions. The court also stopped this testimony after it felt the background had been sufficiently established.
 
 
 15
 The defendant continues to object to this hearsay testimony, arguing that there was no evidence that this first-time informant was reliable and that this hearsay was the only thing actually tying the defendant into the drug deal.
 
 
 16
 Given the important background nature of the testimony, the court's instructions to the jury, and the court's ending of the hearsay testimony when the background was clear, we find that the court did not err in allowing the testimony. U.S. v. Evans, 883 F.2d at 501 (under Fed.R.Evid. 801(c), statement is only hearsay if offered for the truth of the matter asserted); U.S. v. Pulley, 922 F.2d 1283, 1288 (6th Cir.), cert. denied, 112 S.Ct. 67 (1991).
 
 Opinion Testimony
 
 17
 Officer Bonner testified that during their conversation in the Church's parking lot the defendant told him that he wouldn't touch "the dope" and that everything was "straight." Bonner testified that, according to his experience as a narcotics officer, the word "straight" was used by drug dealers to mean that nothing was wrong with the deal and it should go ahead.
 
 
 18
 The defendant complains that this testimony should have been disallowed as opinion testimony under Fed.R.Evid. 701. However, Officer Bonner was first qualified by the prosecution as an expert in the investigation of drug crimes, and he testified to his own understanding of what the defendant said, not what the defendant himself meant. Moreover, even were there error here it would be harmless. The defendant can hardly argue that this was a crucial piece of evidence in a case based on the witness testimony of his uncle and several police officers to the effect that the defendant ran the deal and gave the uncle the cocaine to deliver.
 
 Break in the Chain of Custody
 
 19
 Detective Harvey delivered samples of the seized cocaine to the University of Tennessee Toxicology Lab for testing. Frederica Saharovici received and tested the samples, and Harvey retrieved them and returned them to the property room with the lab report. Because Saharovici was to be on vacation during the trial, however, Harvey retrieved the samples and resubmitted them to Harold Steve Nichols, also at the UT Lab. After testing, Harvey retrieved the samples and brought them to court. Nichols testified that they were all cocaine.
 
 
 20
 The defendant claims that the drugs should not have been admitted into evidence. His complaint seems to be that without the testimony of Saharovici there is presumptively a break in the chain of custody.
 
 
 21
 However, a court will not presume a break without evidence of one, and even were there a deficiency in the chain it would go to the weight of the evidence, not its admissibility. U.S. v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). The defense would be permitted to argue, as it was able to in this case, that the jury should discount the evidence accordingly. Moreover, we see no evidence of a break in the chain of custody in this case.
 
 Prior Consistent Statement
 
 22
 Cleothra Benson, the defendant's uncle, was a key prosecution witness. He testified as to the defendant's leadership of the drug deal in question, and as to the defendant's possession of the cocaine and delivery of it to the uncle for further delivery to the informant.
 
 
 23
 At trial, the defense impeached the uncle by suggesting that he was testifying falsely in order to win a better deal for himself. The uncle had pled guilty to his own involvement in this drug deal.
 
 
 24
 To rebut this impeachment, the prosecution offered an audio tape of the uncle's prior consistent statement, given to the police after his own arrest. The court allowed this to be played. Because the uncle spoke with a slur, the court also allowed the prosecution to give the jury a transcript of the tape to help them follow along. He instructed the jury to use the transcript only as an aid, and that only the tape itself was evidence.
 
 
 25
 The defendant objects to the introduction of both the tape and the transcript. He argues that under U.S. v. Robinson, 707 F.2d 872 (6th Cir.1983), either the parties must stipulate to the transcript, or the court must itself approve it, or the parties must each submit their own.
 
 
 26
 We find that the court properly admitted the audio tape as a prior consistent statement intended to rebut the impeachment of the witness under Fed.R.Evid. 801(d)(1). U.S. v. Hamilton, 689 F.2d 1262, 1273-74 (6th Cir.1982), cert. denied, 459 U.S. 1117 (1983); U.S. v. Smith, 746 F.2d 1183, 1185 (6th Cir.1984). As for the transcript, counsel for the defendant admitted at trial that he had previously received a copy and could not challenge its accuracy. The transcript was therefore properly admitted.
 
 Date Worn Off Crucial Evidence
 
 27
 There were two dates written on the bag of drugs, "5-24-92" and "5-25-91," both apparently written by Officer Bonner. Both dates were incorrect, as the sting took place on May 25, 1992. The defendant cross-examined Bonner about these discrepancies, and Bonner was instructed to read the inconsistent dates aloud to the jury. Bonner could explain only that he had simply erred in writing the dates.
 
 
 28
 The defendant asks for a new trial because during the trial one of the dates, "5-24-92," wore off and was no longer clearly visible. He argues that the jury on deliberation did not have this crucial piece of evidence before it. He also claims that, by calling several jurors, he was able to determine that one juror was quite concerned about the discrepancies in the dates.
 
 
 29
 As both the court and the government point out, however, any degradation in the evidence was immaterial. Testimony at trial established the discrepancies in the dates, and both parties were able to argue as to the significance of that. The jury heard the testimony and the arguments, and there is no serious argument to be made that the jury did not have this evidence before it when it deliberated.
 
 Career Offender Status
 
 30
 Benson was sentenced to roughly 24 1/2 years in prison. Because he had a prior drug felony conviction, the maximum sentence for the instant offense is 30 years, and as a "career offender" his base offense level is set by a table in the "career offender" section of the guidelines. The table dictates that the defendant's base offense level is 34, and the court used no enhancements or relevant conduct to increase the offense level. Offense level 34 and Criminal History Category VI give a guideline range of 262-327 months, and the court sentenced him in the middle of this range.
 
 
 31
 The defendant argues that his sentence is illegal because he should not have been assigned "career offender" status. His argument is that most of the convictions that the probation officer and the court used to find that status were convictions for attempts to commit felonies, and that attempts by definition are failures and should therefore not be counted.
 
 
 32
 This argument is implausible on its face. We have crimes of attempt because the mens rea involved is not diminished by failure. Moreover, as the district court noted, U.S.S.G. Sec. 4B1.2, Application Note 1, specifically provides for the inclusion of convictions for attempt. The defendant merely responds that this is, but should not be, the law.
 
 Statutory Maximum Sentence
 
 33
 The defendant insists that his sentence of 295 months exceeds the 20-year maximum legislated for this crime. As the court pointed out at sentencing, however, the statutory maximum under 21 U.S.C. Sec. 841(b)(1)(C) is 30 years for a defendant with a prior drug felony conviction.
 
 Conclusion
 
 34
 For the reasons set forth above, we AFFIRM the defendant's conviction and sentence.
 
 
 35
 This case is not recommended for publication in the Federal Reporter but will be published on Lexis and Westlaw.