*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0385p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            *v.*                                         No. 11-3460

SATHON EVANS,
                    *Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 1:10-cr-83-1—Sandra S. Beckwith, District Judge.

Argued: April 17, 2012

Decided and Filed:  November 15, 2012

Before:  GIBBONS and SUTTON, Circuit Judges, and DUGGAN, District Judge.[*]

_____

### COUNSEL

_____

**ARGUED:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Kevin M. Schad, FEDERAL PUBLIC DEFENDER'S OFFICE, Cincinnati, Ohio, for Appellant.  Christopher K. Barnes, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

### OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge.  Defendant-appellant Sathon Evans pled guilty to being a felon in possession of a firearm and was sentenced to 92 months' imprisonment.  When calculating his base offense level under the United States

_____

[*]The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Sentencing Guidelines, the district court determined that Evans's 2004 Ohio conviction for trafficking in cocaine was a controlled substance offense and that his 2000 Ohio conviction for knowingly assaulting a police officer was a crime of violence as defined under the Guidelines and, accordingly, applied a four-level enhancement to Evans's base offense level pursuant to U.S.S.G. § 2K2.1(a)(2). On appeal, Evans argues that this four-level enhancement was not warranted, claiming that his assault conviction under Ohio Revised Code § 2903.13(A) does not categorically qualify as a crime of violence and that his trafficking in cocaine conviction under Ohio Revised Code § 2925.03(A)(1) does not categorically qualify as a controlled substance offense. He also argues that his sentence is substantively unreasonable. For the reasons that follow, we affirm the sentence imposed by the district court.

I.

On April 22, 2010, Cincinnati Police Department officers on a mountain bike patrol observed a person—later identified as Sathon Evans—sitting on a park bench after the park was closed. The officers approached Evans to investigate why he was in the park after hours, but before he noticed them, Evans got up from the bench and approached a vehicle that had stopped on a street adjacent to the park. While Evans was talking to the occupants of the vehicle, he became aware of the approaching police officers and fled. The officers gave chase, and during the pursuit, they observed Evans holding a pistol in his hand. Before he was apprehended in an alley, officers saw Evans throw the gun on top of a building. Evans was arrested, and the firearm, a loaded .45-caliber semiautomatic handgun, was recovered.

Evans was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and pled guilty to the offense. Prior to sentencing, a probation officer prepared a presentence investigation report ("PSR"). Having concluded that Evans had at least two prior felony convictions of either a crime of violence or a controlled substance offense, the probation officer calculated Evans's base offense level as 24 pursuant to U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2. After several adjustments were applied, Evans's total offense level was 23. The PSR indicated that

Evans had 16 criminal history points, placing him in a criminal history category of VI. This resulted in a recommended sentence of 92 to 115 months' imprisonment.

Evans objected to the probation officer's determination that his 2004 Ohio cocaine trafficking conviction was a controlled substance offense as defined under U.S.S.G. § 4B1.2(b). He argued that his conviction under Ohio Revised Code § 2925.03(A)(1) could not categorically be considered a "controlled substance offense" under the Guidelines because the statute allowed for a conviction for a mere "offer to sell" drugs. Evans also argued that his conviction for knowingly assaulting a police officer, in violation of Ohio Revised Code § 2903.13(A) and (C)(3), could not categorically be considered a crime of violence as defined under U.S.S.G. § 4B1.2(a) because the conduct proscribed by the statute need not be "purposeful." Evans conceded, however, that his prior 2006 felony conviction for drug trafficking in Ohio qualified as a controlled substance offense under the Sentencing Guidelines. As a result, Evans argued that with just one qualifying prior felony conviction, his base offense level under the Guidelines should have been 20 instead of 24.

At sentencing, the district court rejected Evans's arguments and found that his 2004 Ohio conviction of trafficking in cocaine was a controlled substance offense and that his 2000 Ohio conviction for knowingly assaulting a police officer was a crime of violence as defined under § 4B1.2 of the Sentencing Guidelines. After Evans presented his arguments in favor of mitigation and a below-Guidelines sentence—including a difficult, unstable childhood; the murder of his father; a history of substance abuse; the completion of a GED and drug treatment programs; and his claim that he only began carrying a gun for protection after the murder of his brother—the district court considered the 18 U.S.C. § 3553(a) sentencing factors. The district court acknowledged Evans's difficult upbringing but concluded that this factor was outweighed by his lengthy and serious criminal history. The district court ultimately imposed a sentence of 92 months' imprisonment, which was at the bottom end of the Guidelines range.

II.

On appeal, Evans maintains that the district court improperly enhanced his advisory base offense level by four levels, from 20 to 24, under Sentencing Guideline § 2K2.1(a)(2) based on his 2000 felony conviction of knowingly assaulting a police officer and his 2004 felony conviction of trafficking in cocaine. Section 2K2.1(a)(2) provides that if a defendant who is convicted of being a felon in possession of a firearm has at least two prior felony convictions of either a crime of violence or a controlled substance offense, the district court is to apply a base offense level of 24. U.S.S.G. § 2K2.1(a)(2). If a defendant has only one such prior conviction, the district court is to apply a base offense level of 20. *Id*. § 2K2.1(a)(4)(A). Because Evans has admitted that his prior 2006 felony conviction for drug trafficking in Ohio qualifies as a controlled substance offense under the Sentencing Guidelines, we need only find that one of the challenged prior convictions qualifies under §§ 2K2.1 and 4B1.2 to affirm the district court's decision to set Evans's base offense level at 24.

A district court's determination that a prior offense qualifies either as a crime of violence or as a controlled substance offense is a legal determination, which we review *de novo*. *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007); *United States v. McMurray*, 653 F.3d 367, 371 (6th Cir. 2011). When conducting this *de novo* review, this court applies a "categorical" approach, "looking to the statutory definition of the offense and not the particular facts underlying the conviction."[1] *McMurray*, 653 F.3d at 372 (citing *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

A.

Evans claims that his prior conviction for assault of a police officer, in violation of Ohio Revised Code § 2903.13(A) and (C)(3), was not categorically a crime of

---

[1]*McMurray* addressed the issue of whether a Tennessee conviction for aggravated assault qualified as a "violent felony" under the Armed Career Criminal Act ("ACCA"). 653 F.3d at 371. As the *McMurray* court noted, "[w]hether a conviction is a 'violent felony' under the ACCA is analyzed in the same way as whether a conviction is a 'crime of violence' under the United States Sentencing Guidelines ('U.S.S.G.') § 4B1.2(a)." *Id*. at 371 n.1.

violence pursuant to U.S.S.G. § 2K2.1(a)(2).  Section 2K2.1 incorporates the definition of a "crime of violence" from U.S.S.G. § 4B1.2, which provides that

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that–
> > (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> > (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. §§ 4B1.2(a) & 2K2.1, Application Note 1.  The district court found that the Ohio assault statute under which Evans was convicted—Ohio Revised Code § 2903.13(A) and (C)(3), which states: "[n]o person shall knowingly cause or attempt to cause physical harm to another . . . [and] . . . [i]f the victim of the offense is a peace officer . . . while in the performance of [his] official duties, assault is a felony of the fourth degree"—was categorically a crime of violence under both subsections of § 4B1.2(a).  We agree.

First, when the victim is a police officer, the Ohio assault statute describes an offense punishable by imprisonment for a term exceeding one year. *See* Ohio Rev. Code § 2929.14(A)(4).

Next, in order to categorically qualify as a crime of violence under the first subsection of the Guidelines definition, a statute must have as an element the use (or attempted use) of physical force against another.  U.S.S.G. § 4B1.2(a)(1).  When construing the "use of physical force" clause of the ACCA (*see* footnote 1, *supra*), the Supreme Court defined "physical force" to mean "*violent* force—that is, force capable of causing physical pain or injury to another person," and contrasted this level of force with mere unwanted touching, which would be incapable of causing such physical pain or injury. *Johnson v. United States*, 130 S.Ct. 1265, 1270–72 (2010).

The Ohio assault statute at issue requires proof that a defendant knowingly caused or attempted to cause physical harm to another person.  Ohio Rev. Code

§ 2903.13(A).  Ohio defines "physical harm" as any injury, regardless of its gravity or duration.  *See* Ohio Rev. Code § 2901.01(A)(3).  One can knowingly cause or attempt to cause physical harm—*i.e.*, physical injury—to another only by knowingly using or attempting to use physical force—*i.e.*, force capable of causing physical injury.  Conviction under the Ohio statute, § 2903.13(A), therefore, necessarily requires proof that a defendant knowingly used, or attempted to use, physical force capable of causing physical pain or injury and, accordingly, qualifies as a crime of violence under § 4B1.2(a)(1).

Such a conclusion does not conflict with *McMurray*'s holding that in order to qualify as a "crime of violence" the use or attempted use of physical force must involve more than negligent or reckless conduct.  *See McMurray*, 653 F.3d at 374.  Evans was convicted under Ohio Revised Code § 2903.13(A), which requires knowing conduct.  This conclusion, however, does conflict with language found in footnote six of the *McMurray* opinion, in which this court questioned whether a Tennessee statute that required proof that a person caused "serious bodily injury" to another necessarily had as an element "the use of physical force."  *McMurray*, 653 F.3d at 374–75 n.6.

This language in *McMurray* is non-binding dicta, however, as the footnote begins with the caveat, "[a]lthough our decision rests on the Tennessee statute's inclusion of reckless conduct, we also question . . . ."  *See id.*  Moreover, we decline to follow the reasoning contained in the footnote because it appears to be based on the flawed premise that in order for a person to use a strong physical force, the person must generate or direct the use of this force.  The *McMurray* footnote contends that "[a]lthough we might expect that someone who causes serious bodily injury to another did so with a strong physical force, the statute does not require it" and cites as an example a case in which a defendant was convicted of aggravated assault under the Tennessee statute at issue after the defendant placed an unconscious victim in the middle of a road where the victim was run over by a car.[2]  *Id.*  In this example, there clearly was a physical force

---

[2]The footnote addresses knowing or intentional conduct, not reckless conduct—which is addressed in the body of the opinion.  In order to provide any support for the proposition for which it was cited—that one can knowingly or intentionally cause serious bodily injury to another without using a

that caused the victim's injuries—the force of the car—so the *McMurray* court must have been implying that simply because the defendant did not personally generate or direct the force that injured the victim, the defendant did not use this strong physical force. Using this same logic, a person who uses a small amount of physical force—a force that in itself would be incapable of causing physical pain or injury—to intentionally push someone off a cliff does not use strong physical force against another. Rather, the victim's injuries would be caused by the force of gravity.

This cannot be correct. A defendant uses physical force under § 4B1.2(a)(1) when a defendant knowingly sets in motion a series of events that the defendant knows will result in the application of "a force capable of causing physical pain or injury to another person." *See Johnson*, 130 S.Ct. at 1271. Under this formulation, a statute—such as Ohio Rev. Code § 2903.13(A)—that requires a showing that the defendant knowingly caused or attempted to cause a physical injury necessarily has as an element the knowing use or attempted use of physical force against another and thus categorically qualifies as a crime of violence under § 4B1.2(a)(1). *See United States v. Anderson*, 695 F.3d 390, 399–401 (6th Cir. 2012) (holding that, under the Armed Career Criminal Act, the defendant's prior conviction for aggravated assault in Ohio categorically qualified as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(i) because proof of serious physical injury or pain under the Ohio aggravated assault statute necessarily requires proof of violent physical force); *United States v. Gloss*, 661 F.3d 317, 319 (6th Cir. 2011) (holding that an aggravated robbery statute that required proof that the robbery was accomplished with a deadly weapon or resulted in a victim suffering serious bodily injury "falls under the first clause of the definition of violent felony, as it necessarily involves the 'use, attempted use, or threatened use of physical force against the person of another'"); *see also De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011) ("Battery causing bodily harm entails physical force because some sort of physical pain or damage to the body . . . is required to convict." (internal quotation marks omitted)).

---

strong physical force—the defendant in the example must have known or intended that the unconscious victim would be struck by a car.

Evans's reliance on *State v. Cross-Necas*, No. 2010–P–0043, 2011 WL 2120098 (Ohio Ct. App. May 27, 2011), to argue that Ohio Revised Code § 2903.13(A) does not require proof of the use or attempted use of physical force is misplaced.  The *Cross-Necas* court held that multiple scratches on a victim's neck caused by the defendant's fingernails after she swung her arm at the victim were sufficient to constitute physical harm under § 2903.13(A).  2011 WL 2120098, at *4.  Scratches are physical injuries that are typically painful.  Painful injuries are necessarily caused by a force capable of causing physical pain or injury.  Accordingly, *Cross-Necas* does not support Evans's contention that the Ohio assault statute does not require proof of the use of force and does not qualify as a crime of violence under § 4B1.2(a)(1).

Evans's conviction also categorically qualifies as a crime of violence under the so-called residual clause of the Guidelines definition because his offense "otherwise involve[d] conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).  In *Begay v. United States*, the Supreme Court held that the corresponding residual clause of the ACCA applies only to crimes "that are roughly similar, in kind as well as in degree of risk posed," to the enumerated examples of burglary, arson, extortion, and crimes involving explosives.  553 U.S. 137, 143 (2008). The Court concluded that the crime of driving under the influence of alcohol "differs from the example crimes . . . in at least one pertinent, and important, respect.  The listed crimes all typically involve purposeful, 'violent,' and 'aggressive' conduct."  *Id.* at 144–45.

In *Sykes v. United States*, however, the Supreme Court limited the application of *Begay*'s "purposeful, violent, and aggressive" standard, noting that it had no precise textual link to the residual clause and clarifying that this standard should only be applied to crimes premised on strict liability, negligence, or recklessness.  131 S. Ct. 2267, 2275–76 (2011).  Instead, the Court found that the "risk levels" approach provided a "categorical and manageable standard" and used this method to resolve the case.  *Id*. Under this approach, a court considers whether "the risk posed by the crime in question is comparable to that posed by its closest analog among the enumerated offenses." *Id*.

at 2273 (quoting *James v. United States*, 550 U.S. 192, 203 (2007)) (internal editing marks omitted).  The Court compared the crime in question—vehicle flight from a law enforcement officer—to burglary and arson and concluded that vehicle flight involved a similar potential risk of physical injury to others.  *Id.* at 2273–75.  Accordingly, the Court held that felony vehicle flight was a violent felony for purposes of the ACCA.  *Id.* at 2277.

Because the Ohio assault statute in question requires "knowing" conduct, Ohio Rev. Code § 2903.13(A), it is not necessary for us to apply *Begay*'s "purposeful, violent, and aggressive" standard.  *See Sykes*, 131 S. Ct. at 2275.  Rather, we compare the relative risks posed by the offense and the crimes enumerated in § 4B1.2(a)(2) of the Guidelines.  The risk posed by assault under the Ohio statute—knowingly causing or attempting to cause physical harm to another—presents an even higher risk of injury than the enumerated crime of burglary.  "Burglary is dangerous because it can end in confrontation leading to violence," *id*. at 2273, while an assault under § 2903.13(A) is dangerous because it is itself a confrontation that involves violence.  The risk of injury posed by knowing assault under the statute is at least as great as the risk posed by burglary, or as the Court addressed in *Sykes*, felonious flight from a law enforcement officer.  As a result, Evans's conviction under Ohio Revised Code § 2903.13(A) categorically qualifies as a crime of violence under the residual clause of the Guidelines definition as well.

## B.

Evans also argues that his prior conviction for trafficking in cocaine, in violation of Ohio Revised Code § 2925.03(A)(1), was not categorically a controlled substance offense under U.S.S.G. § 2K2.1(a)(2) because the statute allows for a conviction for a mere "offer to sell" drugs.  The government contends that an offer to sell a controlled substance under the Ohio statute qualifies as a controlled substance offense under the Guidelines.

The Ohio drug trafficking statute under which Evans was convicted states that "[n]o person shall knowingly . . . [s]ell or offer to sell a controlled substance."  Ohio

Rev. Code § 2925.03(A)(1). The statute thus proscribes two kinds of conduct—selling and offering to sell a controlled substance. *See State v. Short*, No. 83804, 2005 WL 2100969, at \*4 (Ohio Ct. App. Sept. 1, 2005) ("Criminalizing an offer to sell a controlled substance is aimed to prevent drug commerce; there need not be an actual sale."). Because the Ohio court documents do not indicate whether Evans was convicted for selling cocaine or offering to sell cocaine, the panel should look to the lesser of the two offenses, an offer to sell cocaine, to determine whether this offense categorically qualifies as a controlled substance offense under U.S.S.G. § 2K2.1. *See Johnson*, 130 S. Ct. at 1269.

Section 2K2.1 incorporates the definition of a "controlled substance offense" from U.S.S.G. § 4B1.2, which provides that

> (b) The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year,[3] that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. §§ 4B1.2(b) & 2K2.1, Application Note 1. Further, a "controlled substance offense" includes "the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." U.S.S.G. § 4B1.2, Application Note 1.

Two cases by this court provide persuasive support for the proposition that a conviction for knowingly offering to sell a controlled substance *is* a controlled substance offense under U.S.S.G § 4B1.2(b). *See United States v. Jackson*, 296 F. App'x 491, 493 (6th Cir. 2008) (finding that the district court "properly determined that [the defendant] had been convicted of a controlled substance offense" after relying on an indictment that charged the defendant "with knowingly selling, or offering to sell, a controlled substance" under an older version of Ohio Revised Code § 2925.03(A)); *United States v. Montanez*, 442 F.3d 485, 493 n.5 (6th Cir. 2006) (suggesting that Ohio statutory

---

[3]It is not contested that offering to sell cocaine is an offense punishable by imprisonment for a term exceeding one year. *See* Ohio Rev. Code § 2929.14(A)(4).

sections that criminalized sales and offers to sell a controlled substance—as opposed to mere possession in a bulk amount—"arguably" would qualify as controlled substance offenses).

Evans points to two cases from the Second and Fifth Circuits, however, which held that where a state offense permits a conviction for an "offer to sell" and does not require the presence of actual narcotics, the prior offense will not meet the definition of a "controlled substance offense." *See Unites States v. Savage*, 542 F.3d 959, 965–66 (2d Cir. 2008) (holding that "a mere offer to sell," absent possession, does not qualify as a controlled substance offense, reasoning that "[a]n offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge. In such a circumstance, the offer to sell is fraudulent in the sense that the person offering the bridge or the drug does not have the *intent* to distribute or sell the item. As we have held, a crime not involving the mental culpability to commit a substantive narcotics offense [does not] serve as a predicate 'controlled substance offense' under the Guidelines." (internal citation and quotation marks omitted)); *United States v. Price*, 516 F.3d 285, 287 (5th Cir. 2008) (holding that a conviction under the Texas statute at issue for offering to sell a controlled substance was not a "controlled substance offense" under the Guidelines).

This court found in *Mendieta-Robles v. Gonzales*, 226 F. App'x 564, 570 (6th Cir. 2007) that "[t]o be convicted under ORC § 2925.03(A)(1), an individual need only *intend to offer to sell* a controlled substance" (emphasis added), but this no longer appears to be a correct statement of Ohio law. The Supreme Court of Ohio held in *State v. Cabrales*, 886 N.E.2d 181, 188 (Ohio 2008), that "[t]rafficking under R.C. 2925.03(A)(1) requires an *intent to sell*, but the offender need not possess the controlled substance in order to offer to sell it." (emphasis added) The distinction between an "intent to sell" and an "intent to offer to sell" is crucial and distinguishes the Ohio drug trafficking statute from the statute at issue in *Savage*. Because conviction under § 2925.03(A)(1) for an offer to sell a controlled substance requires an intent to sell a controlled substance, the statute, as interpreted by the Supreme Court of Ohio, does not

encompass fraudulent offers to sell—*i.e.*, an offer to sell a controlled substance when the defendant has no intention of carrying out the sale.

Instead, because a conviction under § 2925.03(A)(1) requires an intent to sell a controlled substance, such a conviction under the statute for an offer to sell is properly considered an attempt to transfer a controlled substance, which is a "controlled substance offense" under the Guidelines. *See* U.S.S.G. § 4B1.2, Application Note 1. "We have crimes of attempt because the *mens rea* involved is not diminished by failure." *United States v. Benson*, 27 F.3d 567 (table), 1994 WL 188504, at *5 (6th Cir. 1994). Criminal attempt requires that the defendant intended to commit the crime and that the defendant took a substantial step towards committing the crime, beyond mere preparation. Sixth Circuit Pattern Jury Instructions, § 5.01; *United States v. Dolt*, 27 F.3d 235, 239 (6th Cir. 1994). Conviction under § 2925.03(A)(1) requires proof of both elements. A defendant must have the intent to sell a controlled substance in order to be convicted under the Ohio statute. *Cabrales*, 886 N.E.2d at 188. And the act of offering to sell a controlled substance is a substantial step towards committing the crime of distributing a controlled substance. *See United States v. Colon*, 268 F.3d 367, 377 (6th Cir. 2001) (holding that distribution of a controlled substance under 21 U.S.C. § 841(a), which may involve actual or constructive possession of a controlled substance, also includes "other acts perpetrated in furtherance of a transfer or sale, such as arranging or supervising the delivery, or negotiating for or receiving the purchase price"); *United States v. Wigley*, 627 F.2d 224, 226 (10th Cir. 1980) ("Activities in furtherance of the ultimate sale such as vouching for the quality of the drugs, negotiating for or receiving the price, and supplying or delivering the drug are sufficient to establish distribution."). An offer to sell a controlled substance is an act perpetrated in furtherance of a sale, typically as part of the negotiation for the price and quantity, and it is therefore a substantial step in attempting to consummate a sale. Accordingly, a conviction under § 2925.03(A)(1) for offering to sell a controlled substance constitutes an attempt to distribute a controlled substance, and thus a conviction under the statute categorically qualifies as a controlled substance offense under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2(b).

Because we hold that Evans's conviction for assault of a police officer under Ohio Revised Code § 2901.13 is a crime of violence and his conviction for trafficking in cocaine under Ohio Revised Code § 2925.03(A)(1) is a controlled substance offense, Evans has at least two qualifying prior felony convictions under U.S.S.G. § 2K2.1(a)(2), and the district court properly determined that his base offense level was 24 under this provision of the Guidelines.

### III.

Evans also challenges the substantive reasonableness of his sentence, arguing that a term of 92 months' imprisonment was greater than necessary. "Post-*Booker*, we review a district court's sentencing determination under a deferential abuse-of-discretion standard, for reasonableness." *United States v. Presley*, 547 F.3d 625, 629 (6th Cir. 2008) (internal quotation marks omitted). Review of the substantive reasonableness of a sentence takes into account the totality of the circumstances. *Gall v. United States*, 552 U.S. 38, 51 (2007). A sentence may be substantively unreasonable, for example, if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent Section 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor. *United States v. Webb*, 403 F.3d 373, 385 (6th Cir. 2005). When a sentence falls within the Guidelines range, a presumption of reasonableness applies. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (*en banc*). "The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court." *Gall*, 552 U.S. at 51.

Evans claims that his sentence is greater than necessary because of his personal history and other mitigating factors. During his sentencing hearing, Evans offered the following reasons in favor of mitigation and a below-Guidelines sentence: an unstable childhood, the murder of his father, a history of substance abuse, the completion of a GED and drug treatment programs, his claim that his two sons need him, his claim that he only began carrying a gun for protection after the murder of his brother, and his claim that category VI overstated the seriousness of his prior criminal activity.

The district court considered these mitigating factors, acknowledging Evans's difficult upbringing, but concluded that they were outweighed by his lengthy and serious criminal history. It found that his criminal conduct demonstrated "a life of disrespect for the law" and that Evans was "clearly a risk to reoffend." The need to promote respect for the law and to provide adequate deterrence and protection of the public points to the reasonableness of the sentence imposed. The district court did not abuse its discretion when it concluded that these concerns outweighed the mitigating factors offered by Evans. The district court did not select the sentence arbitrarily, base its decision on impermissible factors, fail to consider pertinent Section 3553(a) factors, or give an unreasonable amount of weight to any pertinent factor. *See Webb*, 403 F.3d at 385.

Moreover, because both of Evans's challenged prior convictions qualify as predicate offenses under U.S.S.G. § 2K2.1(a)(2), the district court correctly determined Evans's base offense level, which resulted in a recommended sentence of 92 to 115 months' imprisonment. Because the sentence of 92 months' imprisonment is within the recommended range under the Guidelines, it is presumptively reasonable. *See Vonner*, 516 F.3d at 389. Evans has failed to rebut this presumption. *See United States v. Robinson*, 503 F.3d 522, 528 (6th Cir. 2007) (finding that it is incumbent upon the defendant to establish that his within-Guidelines sentence was unreasonable); *United States v. Trejo-Martinez*, 481 F.3d 409, 413 (6th Cir. 2007) ("The mere fact that [the defendant] desired a more lenient sentence, without more, is insufficient to justify our disturbing the reasoned judgment of the district court."). Evans's sentence was substantively reasonable.

IV.

For the reasons provided above, we affirm the district court's judgment.