NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0075n.06

Case No. 18-3058

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Feb 13, 2019<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
|  | ) | THE NORTHERN DISTRICT OF |
| JUAQUENE SOLOMON, | ) | OHIO |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) |  |
| _____/ | ) |  |

**Before: MERRITT, GUY, and MOORE, Circuit Judges.**

**RALPH B. GUY, JR., Circuit Judge.** Juaquene Solomon challenges his sentence. He signed a Rule 11 plea agreement and pleaded guilty to possessing a controlled substance (fentanyl) with the intent to distribute it. He and the government agreed that under the U.S. Sentencing Guidelines, the base offense level was 24 but they did not agree on Solomon's criminal history category. Instead, they left it to the district court to make that determination following a presentence investigation. The district court ultimately found that Solomon was a career offender and thus faced a guideline range of 188 to 235 months—a range considerably higher than what Solomon would have faced absent the career-offender designation. Although the district court imposed a sentence of 125 months—63 months below the low end of the guideline range—the sentence was still higher than the maximum for a non-career offender. Solomon insists he is not

a career offender and thus appeals his sentence. We conclude that the district court did not err in applying the career-offender enhancement and therefore affirm the judgment.

I.

Customs and Border Protection grew suspicious after six parcels addressed to "L.B." in Akron, Ohio arrived from overseas. When a seventh package arrived, agents detained the parcel and discovered that it contained 86.35 grams of fentanyl, a Schedule II controlled substance. *See* 21 U.S.C. § 812, Schedule II(b)(6). Law enforcement officers staged a delivery of the package to its intended destination, where Solomon picked it up. He was arrested and confessed that he arranged for the package to be shipped from overseas and later admitted that he had intended to distribute the fentanyl.

Two months later, Solomon entered into a Rule 11 plea agreement. Under the terms of the agreement, Solomon confirmed that he understood that sentencing rested "within the discretion" of the district court; that "recommendations of the parties [would] not be binding upon" the district court; and that "the advisory guideline range [would] be determined by the [district court] at the time of sentencing, after a presentence report ha[d] been prepared by the U.S. Probation Office and reviewed by the parties." Solomon and the government further agreed that the amount of fentanyl found in the package corresponded to a base offense level of 24 under the U.S. Sentencing Guidelines. On the matter of Solomon's criminal history category, however, the plea agreement expressly stated that "[t]he parties have no agreement about the Criminal History Category applicable in this case. Defendant understands that the Criminal History Category will be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office."

The Probation Office subsequently issued a presentence report (PSR). Consistent with the plea agreement, the PSR also pegged Solomon's base offense level at 24. But the Probation Office determined that Solomon had two relevant prior state felony convictions: one for trafficking in cocaine, the other for domestic violence. The Probation Office determined that the first conviction is a controlled substance offense and the other is a crime of violence, thus making Solomon a career offender under USSG § 4B1.1(a). This designation increased his base offense level to 34. *See* 21 U.S.C. § 841(b)(1)(B)(vi) (establishing a maximum penalty of 40 years of imprisonment for the underlying offense); USSG § 4B1.1(b)(2) (resetting the offense level to 34 based on the offense's statutory maximum penalty). After deducting three points to account for Solomon's acceptance of responsibility, the PSR reported a total offense level of 31.

Solomon objected to the PSR's designation of him as a career offender. He insisted that Ohio's drug-trafficking statute is overbroad for two reasons. First, the statute's phrase "sell or offer to sell" a controlled substance is overly broad. Second, the statute criminalizes possession of drugs that are not controlled substances under federal law. Solomon also objected to his domestic violence conviction being classified as a crime of violence, arguing that the Ohio statute is overbroad and does not categorically qualify as a crime of violence under the guidelines. The Probation Office included rebuttals to the arguments regarding the drug-trafficking conviction in the final PSR.

At the outset of the sentencing, the district court denied Solomon's request that it simply rely on the plea agreement's guideline calculations. Instead, the court undertook a review of the PSR and Solomon's objections. Like the plea agreement and the PSR, the court also began with a base offense level of 24. Over Solomon's objections, the court then applied the same adjustments described in the PSR: the court found Solomon to be a career offender and decreased his offense

level for accepting responsibility. The result was an offense level of 31 and a criminal history category of VI, together producing a guideline range of 188–235 months. *See* USSG § 5A. The court, however, determined that though the offense was "significant," giving Solomon a bottom-of-the-Guidelines sentence "seem[ed] beyond what is necessary[.]" Accordingly, the court sentenced him to 125 months of imprisonment.[1]

## II.

This case turns on whether two of Solomon's prior convictions fall within the ambit of USSG § 4B1.1(a). Under that provision of the Guidelines, a defendant is deemed a "career offender" if he "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG § 4B1.1(a). We use the so-called "categorical approach" to determine, *de novo*, whether a prior offense constitutes a "crime of violence" or a "controlled substance offense" under USSG § 4B1.1(a). *See United States v. Evans*, 699 F.3d 858, 862 (6th Cir. 2012); *United States v. Soto-Sanchez*, 623 F.3d 317, 321 (6th Cir. 2010). This means we look only to "the statutory definition of the offense and not the particular facts underlying the conviction." *Evans*, 699 F.3d at 862 (quoting *United States v. McMurray*, 653 F.3d 367, 372 (6th Cir. 2011)).

Solomon asserts that neither of the felony convictions relied upon by the district court qualify as predicates. First, he argues that Ohio's domestic violence statute "does not categorically contain an element of force" and is therefore not a crime of violence under the career offender guideline. Second, he advances two distinct arguments that Ohio's drug-trafficking statute is

---

[1] Notably, this would have been the top of Solomon's guideline range absent the career-offender enhancement while still accounting for his criminal history score. That is because Solomon had 26 other convictions in addition to the cocaine and domestic violence convictions, four of which contributed to his criminal history score. The PSR thus calculated Solomon's total score as 13, giving him the same criminal history category (VI) called for by USSG § 4B1.1(b). *See* USSG § 5A. When combined with a base offense level of 24, the result was a range of 100–125 months. *See id.*

"categorically overbroad" and "does not constitute a controlled substance offense under the career offender guideline."

### A. The Domestic Violence Conviction

Under the Guidelines, an offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another[.]" USSG § 4B1.2(a)(1). "Physical force" means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting 18 U.S.C. § 924(e)(2)(B)(i)); *see also United States v. Morris*, 885 F.3d 405, 409 (6th Cir. 2018) (recognizing that § 4B1.2(a)(1) uses the same definition). In other words, a predicate crime of violence must have as an element the threat, attempt, or actual use of force capable of causing physical pain or injury to another person.

According to the PSR, Solomon was convicted under subsection (A) of Ohio's domestic violence statute. At the time of his conviction, this meant that Solomon "knowingly cause[d] or attempt[ed] to cause physical harm to a family or household member." Ohio Rev. Code § 2919.25 (2006). Ohio law, then and now, defines "physical harm to persons" as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." *Id.* § 2901.01(A)(3). And the Ohio Supreme Court has interpreted "injury" to mean the "invasion of any legally protected interest of another." *State v. Suchomski*, 567 N.E.2d 1304, 1305 (Ohio 1991) (emphasis omitted) (quoting *Black's Law Dictionary* 785 (6th ed. 1990)).

In light of Ohio's inclusive definition of "injury" in this context, Solomon contends that the domestic violence statute is broader than the "violent force" demanded under *Johnson*. To put it in the terms Solomon's counsel used during sentencing, "I could come up and flick Mr. Solomon on the ear, and if he's a household member I could be charged with domestic violence. . . . [T]his

categorically is not the kind of statute that falls in line with what is contemplated in the career offender guideline."

As Solomon admits, we have tread this ground before. In *United States v. Gatson*, 776 F.3d 405 (6th Cir. 2015), we considered whether the same subsection of Ohio's domestic violence statute met *Johnson*'s requirements to be a "crime of violence." We concluded that it did because force that causes injury, illness, or other physiological impairment "is (to some extent, by definition) force 'capable of causing physical injury or pain to another person.'" 776 F.3d at 410–11. The government asserts that this holding ends the matter, for a prior panel's decision remains binding precedent until a Supreme Court decision "mandates modification or this Court sitting en banc overrules the prior decision." *United States v. Moody*, 206 F.3d 609, 615 (6th Cir. 2000). According to the government, neither has occurred.

Solomon suggests otherwise. He avers that a subsequent decision about a separate Ohio statute called the *Gatson* holding into question. In *United States v. Yates*, we considered whether there was a "realistic probability" that a defendant could violate Ohio's robbery statute (Ohio Rev. Code § 2911.02(A)(3)) by using "a level of force lower than the type of violent force required by *Johnson*." 866 F.3d 723, 732 (6th Cir. 2017). After reviewing the text of the statute and Ohio courts' applications of it, we concluded that it did not categorically qualify as a crime of violence. *Id.* Solomon reasons that the logic of that decision should apply equally to the domestic violence statute. According to Solomon, if a purse snatcher who encounters little resistance does not use violent force, the same should go for a domestic abuser who delivers a slight-yet-unwanted touch.

Whatever merit Solomon's comparisons may have, the *Yates* decision concerned an entirely different statute, and this makes all the difference. This court, in a published opinion, held that Ohio Rev. Code § 2919.25(A) describes a "crime of violence" as defined in 18 U.S.C.

§ 924(e)(2)(B)(i). *Gatson*, 776 F.3d at 410. The identical definition in the Sentencing Guidelines means the conclusion holds true here, too. *See Morris*, 885 F.3d at 409. Solomon provides no Supreme Court case mandating a departure from *Gatson*, which leaves this panel bound by our precedent. We must therefore reject Solomon's argument as to his domestic violence conviction.

## B. The Controlled Substance Conviction

According to the PSR, in 2001 Solomon was convicted under Ohio Rev. Code § 2925.03(A)(1). This meant he knowingly sold or offered to sell "a controlled substance." Ohio Rev. Code § 2925.03(A)(1) (2001). The Guidelines define a "controlled substance offense" as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

USSG § 4B1.2(b). Solomon contends that the Ohio statute is broader than the Guidelines' definition in two ways. First, Ohio law criminalizes offering to sell a controlled substance, which one could do without manufacturing, importing, exporting, distributing, dispensing, or possessing it (or its counterfeit). Second, because Ohio's list of controlled substances includes two drugs that are not controlled substances under federal law, the Ohio law is broader than the Guidelines' definition.

### 1. "Offering" as Overly Broad

Like Solomon's domestic-violence argument, we have been here before. In *United States v. Evans*, we concluded that a conviction under § 2925.03(A)(1) "categorically qualifies as a controlled substance offense" under the Guidelines. 699 F.3d 858, 868 (6th Cir. 2012). We reached this result after observing that Ohio's Supreme Court held that trafficking under § 2925.03(A)(1) "requires an *intent to sell*, but the offender need not possess the controlled substance in order to offer to sell it." *Id.* at 867 (quoting *State v. Cabrales*, 886 N.E.2d 181, 188

(Ohio 2008)).[2] We then reasoned that because the Ohio statute requires intent, a conviction based upon an offer to sell "is properly considered an attempt to transfer a controlled substance[.]" *Id.* And an application note to the Guidelines states that the term "controlled substance offense" includes "attempting to commit such offense." USSG § 4B1.2, Application Note 1.

Nothing but time distinguishes Solomon's case from our decision in *Evans*. Solomon argues that subsequent Supreme Court decisions—*Mathis* and *Descamps*—have eroded *Evans*'s foundation, but we disagree. Those decisions permit courts to use the modified categorical approach when reviewing convictions for crimes with alternative elements that are potentially broader than the offenses described in the Guidelines. *See Mathis v. United States*, 136 S. Ct. 2243, 2253 (2016); *Descamps v. United States*, 570 U.S. 254, 263–64 (2013). In *Evans*, the only arguably broader version of the offense was *offering* to sell drugs, as opposed to actually selling them. But the court's analysis focused on the offer offense, so using a different approach post-*Mathis* would nevertheless produce the same result. In sum, *Evans* remains unshaken and binding precedent that compels us to reject Solomon's first argument regarding his drug conviction.

## 2. "Controlled Substance" as Overly Broad

This leaves only Solomon's claim that the difference between the state and federal drug schedules renders Ohio's statute overbroad. We have not yet taken up this question in a published opinion, and two of our recent unpublished opinions have come out in different directions. In *United States v. Smith*, we stated without further elaboration that:

---

[2] Although the *Cabrales* decision postdated Solomon's conviction, the text of the statute remained constant throughout, and a "judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312–13 (1994).

> Because there is no requirement that the particular controlled substance underlying a state conviction also be controlled by the federal government, and because the Guidelines specifically include offenses under state law in § 4B1.2, the fact that Illinois may have criminalized the "manufacture, import, export, distribution, or dispensing" of some substances that are not criminalized under federal law does not prevent conduct prohibited under the Illinois statute from qualifying, categorically, as a predicate offense.

681 F. App'x 483, 489 (6th Cir.), *cert. denied*, 137 S. Ct. 2144 (2017). But a year later, we again faced § 4B1.2's use of the term "controlled substance," and we defined it by reference to the Controlled Substances Act, which exclusively relies on the federal schedule of substances. *United States v. Pittman*, 736 F. App'x 551, 553 (6th Cir.) (quoting 21 U.S.C. § 802(6)), *cert. denied*, — S. Ct. —, 2018 WL 5267765 (Dec. 3, 2018). We therefore concluded that because Michigan's drug schedule was broader than the federal schedule, the state law "necessarily criminalizes some actions that are not 'controlled substance offenses' within the meaning of USSG § 4B1.2(b)." *Id.* at 554. We then applied the "two-step 'categorical approach'" to determine if the statute was overbroad. We concluded that the statute was divisible and referenced the *Shepard* documents to conclude that the defendant had been convicted of a controlled substance offense involving a drug included in the federal schedule. *Id.* at 555–56.

This case does not require us to resolve any disagreement between *Smith* and *Pittman*. In cases like this one, as in *Pittman*, we often begin by determining whether the state statute, as a whole, is overbroad. If it is, we then decide whether it is divisible and, following that, whether we can conclude which subdivision the conviction falls under. *See, e.g.*, *Richardson v. United States*, 890 F.3d 616, 621 (6th Cir. 2018); *United States v. Cooper*, 739 F.3d 873, 880–81 (6th Cir. 2014). Here, it would (in a sense) be overly broad to begin with the overbreadth question because whatever the answer, it has no import on the case before us. The statute at issue is clearly divisible and the conviction is easily placed in a subdivision without recourse to any *Shepard* documents.

As we will explain, the Ohio offense Solomon was convicted of is specific to cocaine, a federally controlled substance, thus ending the matter.

Section 2925.03 of the Ohio Revised Code is titled "Drug trafficking." It begins with two prohibitions:

> (A) No person shall knowingly do any of the following:
>
> > (1) Sell or offer to sell a controlled substance or a controlled substance analog;
> >
> > (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

Ohio Rev. Code § 2925.03(A) (2001). Subsection (C) then lists the actual crimes: it explains that if a person violates subsection (A), he is "guilty of one" of several listed offenses. *Id.* § 2925.03(C). For instance, if the drug is marihuana, then the crime is "trafficking in marihuana," which can be a felony or a misdemeanor, depending on the amount involved. *Id.* § 2925.03(C)(3). If the drug is cocaine, the crime is "trafficking in cocaine," which is always a felony, but it varies by degree. *Id.* § 2925.03(C)(4). Other non-named drugs are lumped into offenses called "trafficking in drugs" and "aggravated trafficking in drugs." *Id.* § 2925.03(C)(1), (2). Aggravated trafficking in drugs includes dealings in naloxone: the substance identified by Solomon as a Schedule II substance in Ohio but uncontrolled at the federal level. *Id.* § 3719.41 Schedule II (A)(1). Ohio law therefore makes plain that a naloxone seller and a cocaine seller do not commit the same offense by different means; they commit different offenses altogether. *Accord Mihus v. Sessions*, 726 F. App'x 417, 426–27 (6th Cir. 2018) (recognizing that § 2925.03 "defines separate crimes and penalties based on the identity of the controlled substance").

This accords with both of the Ohio Supreme Court decisions cited by the parties. In *State v. Headley*, a drug-dealing defendant sought to dismiss an indictment, post conviction, because it had charged him with "aggravated trafficking but neglected to state the controlled substance involved." 453 N.E.2d 716, 720 (Ohio 1983).[3] The Ohio Supreme Court agreed that the indictment was fatally flawed because "the type of controlled substance involved constitutes an essential element of the crime" such that amending the indictment "would change the very identity of the offense charged." *Id.*[4] Nearly 30 years later, the Ohio Supreme Court clarified the *Headley* holding in *State v. Jackson*. There, the indictment charged the defendant with trafficking a "substance included in Schedule I or II" but did not specifically name the substance itself (benzylpiperazine). *State v. Jackson*, 980 N.E.2d 1032, 1033 (Ohio 2012). The Supreme Court pointed out that it had never required naming the drug itself, because even in *Headley*, the court gave "two examples in which it recognized that the *schedule* of the drug involved was sufficient to put the defendant on notice of the severity of the offense, i.e., trafficking or aggravated trafficking." *Id.* at 1037 (citing *Headley*, 453 N.E.2d at 720). Consequently, the *Jackson* court held that an indictment passes muster "if it names the schedule in which the drug appears." *Id.*

Solomon concludes that the *Jackson* holding means that the particular drug is simply a means of proving an element of the crime. We disagree. The requirement that the indictment name the schedule—though not necessarily the exact drug—confirms that § 2925.03 contains multiple offenses (aggravated trafficking in drugs, trafficking in cocaine, trafficking in marihuana, etc.). The type of drug is an element of each of these distinct offenses. *See id.* at 1036. A substance

---

[3] The 1983 version of the drug-trafficking statute was not entirely identical to the 2001 version, but they are directly comparable in all relevant respects.

[4] One justice dissented, explaining that, in his view, the indictment should stand because "the nature of the drug involved does not affect the identity of the offense, only the degree of the felony." *Headley*, 453 N.E.2d at 721 (Holmes, J., dissenting).

like benzylpiperazine need not be specifically identified in an indictment because all Schedule I drugs are treated alike "with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog." Ohio Rev. Code § 2925.03(C)(1). As already explained, those excepted substances have their own distinct offenses—for instance, "trafficking in cocaine." *See id.* § 2925.03(C)(4).

All of this means that Ohio's drug-trafficking statute is divisible. And the division called for in this case is easily accomplished. The PSR informs us that Solomon was convicted of the distinct offense of "trafficking in cocaine"—a fact Solomon neither objected to during sentencing[5] nor directly objects to now on appeal. One can commit the crime of trafficking in cocaine, via subsection (A)(1), only by selling or offering to sell cocaine—not any other substance. Cocaine is a federally controlled substance and thus under any of the parties' proposed constructions of "controlled substance" as it is used in USSG § 4B1.1(a), Solomon's conviction for "trafficking in cocaine" plainly qualifies as a predicate offense.

III.

Both Solomon's domestic-violence conviction and his conviction for trafficking in cocaine qualified as predicate offenses. The judgment of the district court is therefore AFFIRMED.

---

[5] The Probation Office identified the distinction between trafficking in cocaine and trafficking in drugs when it responded to Solomon's initial objections and he declined to revive the argument at sentencing.

**KAREN NELSON MOORE, Circuit Judge, concurring.** I concur and add the following observation regarding Part II.A.

Although we conclude that *United States v. Gatson*, 776 F.3d 405, 410–11 (6th Cir. 2015), governs this case as binding precedent, I note that *Gatson*'s overbreadth analysis of Ohio's domestic violence statute read in an assumption of force that the statutory language does not include. Ohio Rev. Code § 2919.25 does not specify that the "physical harm" even be inflicted through force. Its plain language requires only that the perpetrator "cause or attempt to cause physical harm"; the means are not specified. Ohio Rev. Code § 2919.25. The *Gatson* court did not proceed further in its overbreadth analysis to assess how the statute is applied in Ohio. *See, e.g., Moncrieffe v. Holder*, 569 U.S. 184, 194–95 (2013).