RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0050p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

No. 16-1349

*v.*

MELVIN ANDREW MORRIS,

*Defendant-Appellant.*

Appeal from the United States District Court for
the Eastern District of Michigan at Bay City.
No. 1:14-cr-20427-5—Thomas L. Ludington, District Judge.

Argued: January 25, 2017

Decided and Filed: March 15, 2018

Before: GILMAN, GRIFFIN, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Stevens J. Jacobs, JACOBS LAW OFFICE, Bay City, Michigan, for Appellant.
Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.
**ON BRIEF:** Stevens J. Jacobs, JACOBS LAW OFFICE, Bay City, Michigan, for Appellant.
Mark Chasteen, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

JANE B. STRANCH, Circuit Judge. This case returns us to the serial litigation over the meaning of the terms "physical force" and "crime of violence." Melvin Morris was convicted of one count of distribution of cocaine base, in violation of 21 U.S.C. § 841, and was sentenced as a

career offender under United States Sentencing Guideline (USSG) § 4B1.1.  Morris challenges that sentence, arguing that his two prior felony convictions for domestic assault under Michigan Compiled Laws (M.C.L.) § 750.81 are not crimes of violence under § 4B1.2.  We conclude that a conviction under M.C.L. § 750.81 is a crime of violence under the residual clause of the Guidelines.  Accordingly, we **AFFIRM**.

## I.  BACKGROUND

Morris pled guilty to the distribution of cocaine base, in violation of 21 U.S.C. § 841(a)(1).  The plea agreement specified a Guidelines range of 30 to 37 months in prison.  Because an amendment lowering the applicable drug sentencing guidelines was to become effective a few weeks later, the Government did not oppose a two-level downward variance, resulting in a suggested range of 24 to 30 months of imprisonment.  The agreement stated that Morris could withdraw his plea if the court were to impose a sentence higher than 37 months.

Morris had two felony domestic violence convictions under M.C.L. § 750.81(2).  Pursuant to the Michigan statute, the first two convictions for domestic assault are misdemeanor offenses, the third and subsequent violations are felony offenses.  Based on these convictions, the probation officer in Morris's federal case concluded that he qualified as a career offender under USSG § 4B1.1.  Morris asked the district court before sentencing to determine whether he qualified as a career offender, arguing that his two prior domestic violence convictions did not qualify as "crime[s] of violence."  The Government responded that it decided not to score Morris as a career offender and asked the court to sentence him within the range in the plea agreement.

The district court determined that Morris's previous crimes "had as an element the use of . . . physical force against the person of another."  The court also utilized the "modified categorical approach," examining the guilty-plea transcripts from Morris's convictions and finding that both qualified as crimes of violence.  Accordingly, the district court determined that he was a career offender.  Morris then withdrew his plea, proceeded to a jury trial, and was found guilty.

The career offender designation resulted in an offense level of 32, a criminal history category of VI, and a guidelines range of 210 to 262 months of imprisonment as set out in

Morris's new Presentence Report.  The district court varied downward and imposed a sentence of 180 months of imprisonment.  Morris filed a timely appeal.

## II.  ANALYSIS

### A.  Standard of review

Whether Michigan's felony domestic violence statute is a crime of violence under the Guidelines and whether Morris is a career offender are legal questions that we review de novo. *United States v. Cooper*, 739 F.3d 873, 877 (6th Cir. 2014).

### B.  Crimes of violence under the Guidelines

#### 1.  Structure of the Guidelines

Under the Guidelines, a "career offender" must be assigned to the highest criminal-history category and enhanced offense levels.  A defendant is a career offender if:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

USSG § 4B1.1(a).  The Guidelines in effect at the time of Morris's sentencing were the 2015 version[1] that defined a "crime of violence" as:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is a burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

USSG § 4B1.2(a).

---

[1]Courts must utilize the Guidelines Manual in effect on the date the defendant is sentenced.  USSG § 1B1.11.  Morris was sentenced on March 3, 2016, and the Guidelines Manual in effect at that time was the 2015 version.  The United States Sentencing Commission subsequently amended the Guidelines and removed the residual clause.  This change was effective August 1, 2016.  *See* USSG amendment 798.

The 2015 Guidelines had three avenues through which an offense could be designated a crime of violence. *See United States v. Mitchell*, 743 F.3d 1054, 1058 (6th Cir. 2014). These avenues included the "elements clause" found in § 4B1.2(a)(1); the "enumerated offenses clause" in § 4B1.2(a)(2); and the "residual clause," which addresses "conduct that presents a serious potential risk of physical injury to another," § 4B1.2(a)(2). We held that the residual clause was unconstitutionally vague in *United States v. Pawlak*, 822 F.3d 902 (6th Cir. 2016). Subsequent to oral argument here, that decision was abrogated by *Beckles v. United States*, 137 S. Ct. 886 (2017), in which the Supreme Court held that the advisory Guidelines are not subject to a "void for vagueness challenge." Because the crime specified in M.C.L. § 750.81 is not one of the enumerated offenses listed in the 2015 Guidelines, we may affirm Morris's sentence only if the offenses qualify as a violent felony under either the elements clause or the residual clause of § 4B1.2.

2. Morris's offenses

In 2006 and 2010, Morris was convicted of violating M.C.L. § 750.81(2), which states:

[A]n individual who assaults or assaults and batters his or her spouse or former spouse, an individual with whom he or she has or has had a dating relationship, an individual with whom he or she has had a child in common, or a resident or former resident of his or her household, is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

M.C.L. § 750.81(2). Both convictions were enhanced from misdemeanors to felonies based on Morris's prior misdemeanor convictions pursuant to M.C.L. § 750.81(5):

An individual who commits an assault or an assault and battery in violation of subsection (2) or (3), and who has 2 or more previous convictions for assaulting or assaulting and battering an individual described in either subsection (2) or subsection (3) under any of the following, is guilty of a felony punishable by imprisonment for not more than 5 years or a fine of not more than $5,000.00, or both[.]

### 3. Crimes of violence

#### a. Elements Clause

We have interpreted and applied the definition of "crime of violence" in § 4B1.2(a) in the same way as the definition of "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1), because "both laws share essentially the same definitions (if not the same titles)." *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009). "Physical force" in the ACCA means "*violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). Unlike the definition of the common-law term "force," this excludes milder forms of touching. *Id.* at 139.

Thus, to qualify as a "crime of violence" under the elements clause, the Michigan domestic violence statute must contain as an element the "use, attempted use, or threatened use of physical force," defined as "violent force." *Id.* at 140. The Supreme Court's ACCA precedent instructs courts to "apply a 'categorical' approach, meaning that we look at the statutory definition of the crime of conviction, not the facts underlying that conviction, to determine the nature of the crime." *Ford*, 560 F.3d at 422. If the criminal statute is "divisible," however, we may use the "modified categorical approach" and consult a limited class of documents to determine if they "'necessarily' establish the nature of the prior offense." *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

The district court erred in using the modified categorical approach in this case, a point the government concedes. The modified categorical approach is appropriate only when the statutory offense is "divisible," i.e., it "list[s] elements in the alterative, and thereby define[s] multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). A "divisible" statute, the Supreme Court explained, is different from a statute that merely "enumerates various factual means of committing a single element." *Id.*

For several reasons, Michigan's domestic violence statute is not divisible and therefore not amenable to the modified categorical approach. First, the Supreme Court has said so, albeit in dicta. *See United States v. Castleman*, 134 S. Ct. 1405, 1419, 1419 n.5 (2014) (Scalia, J., concurring) (observing that M.C.L. § 750.81 was one of several state domestic violence laws that

"(1) prohibited offensive touching, and (2) were framed in such a way that *offensive touching was indivisible from physical violence*." (emphasis added)); *id.* at 1413 (majority opinion agreeing with the concurrence's interpretation of M.C.L. § 750.81 and other state statutes). And we are aware of no Michigan case interpreting M.C.L. § 750.81 as having divisible elements. Finally, there is no difference in punishment between "harmful touching" and "offensive touching." *See* M.C.L. § 750.81; *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then . . . they must be elements."). Together, these features of Michigan's domestic violence statute support the conclusion that "harmful or offensive touching," rather than "list[ing] multiple elements disjunctively," instead "enumerates various factual means of committing a single element[,]" in this case battery. *Id.* at 2249. We now turn to examination of whether the Michigan domestic violence statute is a "crime of violence" under the elements clause.

Federal courts look to state law to define the elements of a state offense. *United States v. Rede-Mendez*, 680 F.3d 552, 555–56 (6th Cir. 2012). Michigan has defined the terms "assault" and "battery" in M.C.L. § 750.81(2) as follows:

> [A] battery [is] "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." It does not matter whether the touching caused an injury. Further, . . . an assault [is] "an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery."

*People v. Cameron*, 806 N.W.2d 371, 379 (Mich. Ct. App. 2011) (quoting *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005)) (citations omitted). *See also People v. Meissner*, 812 N.W.2d 37, 46 (Mich. Ct. App. 2011); *People v. Terry*, 553 N.W.2d 23, 25 (Mich. Ct. App. 1996).

The Michigan domestic violence statute does not include as an element the use, attempted use, or threatened use of "violent force" against the person of another. Under M.C.L. § 750.81(2), a person can commit a battery by mere offensive, but not harmful, touching of a victim's person or of "something closely connected with" the victim's person. *People v. Reeves*, 580 N.W.2d 433, 435 n.4 (Mich. 1998); *see also Cameron*, 806 N.W.2d at 379; *Meissner*,

812 N.W.2d at 46; *Terry*, 553 N.W.2d at 25.  And this offensive touching can be accomplished without using force capable of causing physical pain or injury.  *See Terry*, 553 N.W.2d at 25.

The Government asks us to include the meaning articulated in *United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014), in the definition of "physical force" in USSG § 4B1.2(a)(1).  The Court in *Castleman* examined 18 U.S.C. § 922(g)(9), which prohibits a person convicted of a "misdemeanor crime of domestic violence" from possessing a firearm. *Castleman*, 134 S. Ct. at 1410.  A "misdemeanor crime of domestic violence" is defined in part as a crime that "has, as an element, the use or attempted use of physical force."  *Id.*; § 921(a)(33)(A).  The Court held that for the purposes of § 922(g)(9), "Congress incorporated the common-law meaning of 'force'—namely, offensive touching—in [the statute's] definition of a 'misdemeanor crime of domestic violence.'"  *Castleman*, 134 S. Ct. at 1410.

The Government argues that in light of the serious problem of domestic violence in this country, the *Castleman* meaning should be used for "physical force" in the present context as well.  But *Castleman* directly addressed the propriety of different definitions of "physical force." The Court first acknowledged *Johnson*'s statement that common-law terms of art incorporate their common-law meanings except "where that meaning does not fit."  *Id.*  Next, the court explained that it had "declined to read the common-law meaning of 'force' into the ACCA's definition of a 'violent felony' because [the Court] found it a 'comical misfit with the defined term.'"  *Id.* (quoting *Johnson*, 559 U.S. at 145).  In contrast, the common-law meaning of "'force' fits perfectly" for purposes of § 922(g)(9), and "[t]he very reasons . . . for rejecting that meaning in defining a 'violent felony' are reasons to embrace it in defining a 'misdemeanor crime of domestic violence.'"  *Id.*  Although it "was unlikely that Congress meant to incorporate in the definition of a violent felony a phrase that the common law gave peculiar meaning only in its definition of a misdemeanor," that meaning was appropriate in defining "misdemeanor crime of domestic violence."  *Id.* at 1411 (internal quotations omitted).

*Castleman* also noted the unique nature of domestic violence statutes:  "whereas the word 'violent' or 'violence' standing alone 'connotes a substantial degree of force,' that is not true of 'domestic violence,' which is a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context."  *Id.* (quoting *Johnson*, 559 U.S. at 140).  The analysis that

*Castleman* employs reveals why the definition of the term "physical force" in USSG § 4B1.2(a)(1) is not interpreted in the same way as it is for the purpose of defining a "misdemeanor crime of violence" in 18 U.S.C. § 922(g)(9). Thus, under our precedent and Supreme Court authority, the Government's argument fails.

As explained above, this court consistently follows ACCA precedent in interpreting the definition of "crime of violence," including the phrase "physical force." *See United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012) (relying on precedent interpreting the analogous ACCA language in construing the "use of physical force" clause of § 4Bl.2); *United States v. Mendez*, 593 F. App'x 441, 443 (6th Cir. 2014) (same). Nevertheless, the Government asks that we give "physical force" a different meaning in this case solely because the underlying offense is a domestic violence offense (hence *Castleman*'s superficial applicability).

Basically, the Government contends that we should give a particular term in § 4B1.2— "physical force"—a different definition depending on the prior conviction at issue. If the underlying prior offense is domestic violence, "physical force" should have the broader common law meaning, which includes "offensive touching." *See Castleman*, 134 S. Ct. at 1412. This is because, the Government contends, "[i]n the context of . . . the pervasive, pernicious problem of domestic violence in this country . . . , application of the presumptive common-law meaning of physical force 'makes sense' when determining whether a prior domestic violence offense qualifies as a crime of violence under USSG § 4Bl.2(a)(l)." Yet, if the prior conviction is some other offense, such as Ohio's "assault of a police officer," "physical force" would still mean "violent force"—unless we overrule our prior precedent. *See Evans*, 699 F.3d at 862–64 (applying the ACCA's definition of "physical force" in determining whether Ohio Rev. Code § 2903.13(A) and (C)(3) qualified as a "crime of violence" under § 4B1.2(a)).

Though the Government accurately describes the problem of domestic violence, no authority supports its approach to interpreting § 4Bl.2, which unacceptably varies from our precedent. It is incongruent with our consistent determination that "[a] 'crime of violence' under the career-offender provision is interpreted identically to a 'violent felony' under [the] ACCA." *United States v. Johnson*, 675 F.3d 1013, 1017 n.3 (6th Cir. 2012).

Michigan's definition of battery in M.C.L. § 750.81(2) does not include an element of "physical force" as defined by the Court in *Johnson*.  559 U.S. at 140; *see also Kearney v. United States*, No. 07-20143, 2016 WL 1407817, at *2–3 (E.D. Mich. April 11, 2016) (concluding for ACCA purposes that M.C.L. § 750.81(4) does not include "physical force" as an element).  Accordingly, it does not qualify as a "crime of violence" under § 4B1.2(a)(1).

### b.  Residual Clause

Having rejected the proposition that M.C.L. § 750.81 is a crime of violence under the elements clause, we now analyze whether the statute qualifies as a crime of violence under the residual clause.  Because M.C.L. § 750.81 is not a divisible statute, we utilize the categorical approach to determine the nature of the crime without regard to the specific offense characteristics of the defendant's offense.  *Ford*, 560 F.3d at 421–22.  "That is, we consider whether the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiring into the specific conduct of this particular offender." *James v. United States*, 550 U.S. 192, 202 (2007) (Although *Johnson* abrogated this holding for purposes of ACCA, the case remains good law for purposes of analyzing the residual clause of the Guidelines).  Whether an offense presents "a serious potential risk of physical injury to another" rests on "inherently probabilistic concepts."  *Id.* at 207.  "[T]he proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* at 208.

The Government argues that M.C.L. § 750.81 is a crime of violence because the nature of domestic conflicts are volatile and have a tendency to escalate over the course of time, creating a risk of confrontation that "might result in bodily injury." *James*, 550 U.S at 199–200.  The Government maintains that due to the face-to-face confrontation required by the statute, the risk of bodily injury is significant, at least as significant as the risk present during an attempted burglary.  *See, e.g.*, *United States v. Phillips*, 752 F.3d 1047, 1050 (6th Cir. 2014) (holding that, under ACCA's residual clause, Florida's third-degree burglary constituted a predicate offense due to the risks of confrontation).

In the context of a face-to-face incident of domestic violence, there is a serious risk of physical injury, sufficient to conclude that M.C.L. § 750.81 is a crime of violence under the residual clause of the Guidelines. In addition to the inherent risks of face-to-face confrontation, domestic violence poses an unusual risk of escalation. As the Supreme Court has repeatedly noted, "domestic abusers exhibit high rates of recidivism, and their violence 'often escalates in severity over time.'" *United States v. Bryant*, 136 S. Ct. 1954, 1959 (2016) (quoting *Castleman*, 134 S. Ct. at 1408).

The Supreme Court's prior residual clause precedents, although limited by the effects of *Johnson*, guide our analysis. The Supreme Court has emphasized that burglary is a crime of violence due to the risks arising should "an innocent person . . . confront the burglar during the crime." *James*, 550 U.S. at 194. Domestic assault includes a similar risk of confrontation. Because we conclude that this risk is at least equivalent to that of the risks associated with burglary, we conclude that M.C.L. § 750.81 is a crime of violence under the residual clause of the Guidelines. Morris therefore was properly sentenced as a career offender.

## III. CONCLUSION

Because M.C.L. § 750.81(2) constitutes a crime of violence under USSG § 4B1.2(a), Morris was correctly sentenced as a career offender. We therefore **AFFIRM**.