RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0210p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 23-1543

CHADRICK AKEEM PERRY,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:20-cr-00163-1—Jane M. Beckering, District Judge.

Argued: June 11, 2024

Decided and Filed: September 4, 2024

Before: COLE, GIBBONS, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Lauren Biksacky, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Paul L. Nelson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Grand Rapids, Michigan, for Appellant. Lauren Biksacky, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

───────────────

## OPINION

───────────────

CHAD A. READLER, Circuit Judge. During his prosecution, Chadrick Perry was committed to a federal facility to restore his competency for trial. Delays in that process

extended his pre-trial proceedings. Eventually, Perry pleaded guilty to being a felon in possession of ammunition. The district court imposed a sentence of 57 months' imprisonment.

On appeal, Perry raises two issues. One involves the Speedy Trial Act. Perry says the Act's timeliness requirements were violated while he awaited competency restoration treatment. The other implicates his sentence. Perry challenges the district court's determination that his prior conviction for aggravated domestic violence was a "crime of violence" under U.S.S.G. § 4B1.2(a), which resulted in an increase to his Guidelines range. Seeing no error on either front, we affirm.

I.

A federal grand jury indicted Perry for being a felon in possession of a firearm and ammunition. Following a not guilty plea in October 2020, Perry was detained at a county jail in Michigan pending trial. While preparing Perry's defense, his counsel came to the view that Perry's competency to stand trial should be evaluated. The district court agreed and granted Perry's motion to determine competency.

Perry then began a long journey through competency evaluation and treatment in the federal Bureau of Prisons. To allow for an evaluation, Perry was transported to a federal facility in Chicago. He remained there for two months, at which point a forensic psychologist deemed him competent to stand trial and recommended that he be returned to pre-trial detention in Michigan. Upon Perry's return, the district court held a competency hearing. The court delayed its competency determination, however, to honor two requests made by Perry: that he be allowed to furnish additional records for his psychologist in Chicago to evaluate, and that he undergo a second, separate evaluation by a different psychologist at a federal facility in North Carolina.

After evaluating Perry, the two forensic psychologists came to different conclusions. Even after review of the additional records, the provider in Chicago continued to deem Perry competent to stand trial. But the examiner in North Carolina determined that Perry was not competent to stand trial. At a subsequent hearing in September 2021, the parties, in light of the latter medical diagnosis, agreed that Perry should be committed to the custody of the Attorney

General under 18 U.S.C. § 4241(d) for competency restoration treatment—a request the district court likewise granted.

Perry was designated to the North Carolina facility for competency restoration on September 30, 2021. For reasons that the government has not fully explained, he did not arrive there until March 1, 2022. Once in North Carolina, Perry underwent treatment by mental health professionals. A few months later, the providers issued a report stating that Perry was competent to stand trial. Following a hearing, the district court found Perry's competence restored and set a date for trial.

With his case moving forward again, Perry moved to dismiss the indictment due to alleged violations of the Speedy Trial Act. Perry asserted that the 152-day period between his designation to be treated in North Carolina and his ultimate arrival there counted against the Speedy Trial Act's 70-day clock for bringing a defendant to trial. The district court denied the motion. In the district court's view, "the entire time from when the [court] deemed [Perry] mentally incompetent to stand trial" in September 2021 "until [it] ruled [Perry's] competency restored" the following September was "fully excluded under [18 U.S.C.] § 3161(h)(4) as a delay resulting from 'the fact that [Perry was] mentally incompetent or physically unable to stand trial.'"

With that, Perry pleaded guilty to one count of the indictment, being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). He did so pursuant to a conditional plea agreement, which allowed him to appeal the denial of his motion to dismiss. His case proceeded to sentencing. The probation office recommended that Perry's otherwise applicable base offense level be increased on the ground that Perry's 2013 state conviction for aggravated domestic violence was a predicate crime of violence. *See* U.S.S.G. § 2K2.1(a)(4). Doing so resulted in a Guidelines range of 51–63 months of imprisonment.

Perry objected to that recommendation. In his view, the prior conviction for domestic violence was not a crime of violence, meaning the proper Guidelines range was 30–37 months. At sentencing, the district court overruled Perry's objection and imposed a within-Guidelines sentence of 57 months. This timely appeal followed.

II.

A.  We consider first Perry's challenge under the Speedy Trial Act.  *See* 18 U.S.C. § 3161 *et seq.*  We review the district court's interpretation of the Act de novo, *United States v. Zabawa*, 719 F.3d 555, 561 (6th Cir. 2013), and its factual findings for clear error, *United States v. Marks*, 209 F.3d 577, 586 (6th Cir. 2000).

Beginning with first principles, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. CONST. amend. VI.  Through the Speedy Trial Act, the basis for Perry's motion to dismiss, Congress set out a framework for honoring that guarantee.  *See Betterman v. Montana*, 578 U.S. 437, 445 (2016).  To that end, the Speedy Trial Act "comprehensively regulates the time within which a trial must begin."  *Zedner v. United States*, 547 U.S. 489, 500 (2006).  At its core is a straightforward command—a defendant must be brought to trial within 70 days from the date of arrest, the filing of the indictment or information, or the defendant's first appearance in court, whichever occurs last.  *See* 18 U.S.C. § 3161(c)(1).  If the defendant's trial does not commence within that period, the indictment must be dismissed, either with or without prejudice.  *Id.* § 3162(a)(2).

As today's case reflects, what is sometimes less straightforward is determining how to apply the statutory exceptions to the 70-day clock.  Certain periods are not counted toward the Act's calculations.  *See id.* § 3161(h).  Examples include delays resulting from "any interlocutory appeal," *id.* § 3161(h)(1)(C), "consideration by the court of a proposed plea agreement," *id.* § 3161(h)(1)(G), and "the absence or unavailability of . . . an essential witness," *id.* § 3161(h)(3)(A).  So long as the triggering event occurs, the excepted periods "shall be excluded." *Id.* § 3161(h); *see United States v. Tinklenberg*, 563 U.S. 647, 655 (2011) ("The whole paragraph [Section 3161(h)] can be read as requiring the automatic exclusion of the . . . specific sublist . . . .").

Two exclusion periods are at issue here.  One is § 3161(h)(4), which omits from the 70-day calculation "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial."  18 U.S.C. § 3161(h)(4).  Another is

§ 3161(h)(1), which excludes various "period[s] of delay resulting from other proceedings concerning the defendant." *Id.* § 3161(h)(1). Relevant "proceedings" include time dedicated to the "transportation of any defendant from another district, or to and from places of examination or hospitalization . . . ." *Id.* § 3161(h)(1)(F). This latter exclusion, it bears noting, has an exclusion of its own, one that presumes unreasonable "any time consumed in excess of ten days from the date [of] an order of removal or an order directing such transportation, and the defendant's arrival at the destination . . . ." *Id.*

Perry argues that time between when he was designated for competency restoration in North Carolina (September 30, 2021) and when he arrived there (March 1, 2022) counts as time spent in transportation under § 3161(h)(1)(F). Because that provision presumptively authorizes only ten days of transportation time, the remaining days, Perry contends, must count toward his Speedy Trial Act clock. And as the total number of non-excludable days exceeds 70, he adds, his prosecution violates the Speedy Trial Act.

Standing alone, the transportation provision might not save Perry's prosecution from dismissal under the Speedy Trial Act. But in this case, we must also consider § 3161(h)(4). Again, that provision excludes from Speedy Trial Act calculations "[a]ny period of delay resulting from" the district court's determination that Perry was mentally incompetent to stand trial, a period that encompasses the entire duration of Perry's transport from Michigan to North Carolina. An examiner in North Carolina determined that Perry was not competent for purposes of trial. Not long thereafter, the district court committed Perry to the custody of the Attorney General. The time following Perry's commitment qualifies as "delay resulting from the fact that [Perry] is mentally incompetent or physically unable to stand trial." 18 U.S.C. § 3161(h)(4). And "*any* period of delay" that falls under § 3161(h)(4) "*shall* be excluded" from Speedy Trial Act calculations. *Id.* §§ 3161(h), 3161(h)(4) (emphasis added).

On its face, this text is unambiguous and mandatory. Read together, the terms "any" and "shall" are absolute prohibitions on counting against the Speedy Trial Act deadline time that results from a defendant being deemed incompetent to stand trial. *See Babb v. Wilkie*, 589 U.S. 399, 405 n.2 (2020) ("The word 'any' has an expansive meaning" (cleaned up)); *Maine Cmty. Health Options v. United States*, 590 U.S. 296, 311 (2020) ("When, as is the case here,

Congress distinguishes between 'may' and 'shall,' it is generally clear that 'shall' imposes a mandatory duty." (cleaned up)).  As a result, the entire period between the district court's order finding Perry not competent to stand trial and the court's order deeming his competence restored must be excluded from the Act's calculations.

In short, the terms of the Speedy Trial Act require us to read § 3161(h)(1)(F) in tandem with § 3161(h)(4), the latter of which independently paused the Act's 70-day countdown during Perry's period of incompetency.  That conclusion makes sense not only as a textual matter, but also as a constitutional one.  After all, trying a defendant deemed incompetent to assist in his defense violates due process.  *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citing *Medina v. California*, 505 U.S. 437, 453 (1992)).  Perry's approach would penalize the government for failing to bring to trial a defendant who could not lawfully be tried.

We are not alone in that understanding.  At least four circuits have harmonized §§ 3161(h)(1)(F) and (h)(4) in the same way.  *See United States v. Minton*, 99 F.4th 692, 695 (4th Cir. 2024) ("[T]here was no proceeding pending when the [delay] took place because [the defendant] had already been declared incompetent . . . . [T]he relevant provision here is Section 3161(h)(4), not Section 3161(h)(1)(F)." (cleaned up)); *United States v. Romero*, 833 F.3d 1151, 1155 (9th Cir. 2016), *cert. denied*, 583 U.S. 875 (2017); *United States v. Patterson*, 872 F.3d 426, 433–34 (7th Cir. 2017); *United States v. Pendleton*, 665 F. App'x 836, 839 (11th Cir. 2016) (per curiam) ("[I]f a defendant is mentally incompetent under § 3161(h)(4), that time is excludable even if there is also a transportation delay that is unreasonably long and thus not excludable under § 3161(h)(1)(F).").  No other circuit, to our knowledge, has held otherwise.

Perry's reliance on *United States v. Turner*, 602 F.3d 778 (6th Cir. 2010), does not alter the result.  *Turner* involved the interplay between §§ 3161(h)(1)(A) and (h)(1)(F)—both of which fall within § 3161(h)(1)'s consideration of exclusions for "other proceedings concerning the defendant."  Subsection (h)(1)(A) excludes delays resulting from "any proceeding[s], including any examinations, to determine" mental competency.  And § 3161(h)(1)(F) concerns delays resulting from transportation to and from examinations and hospitalizations. In *Turner*, we concluded that § 3161(h)(1)(F) presumptively limits § 3161(h)(1)(A), thereby imposing a ten-day limit on excludable transportation time in connection with proceedings to determine

competency before a court has weighed in on a defendant's fitness for trial.  *Turner*, 602 F.3d at 785.  But that does not matter here, when, again, the exclusion in Perry's case arises out of § 3161(h)(4) and its broad carve-out for any delays resulting from a defendant's mental incompetence.  This appeal thus does not depend on the interplay between §§ 3161(h)(1)(A) and (h)(1)(F).  *Cf. Zabawa*, 719 F.3d at 562 (holding that exclusion under § 3161(h)(1)(D) for a pending motion trumped transportation provision in § 3161(h)(1)(F)).  Again, periods covered by § 3161(h)(4) "shall be excluded" in determining Perry's status under the Speedy Trial Act.

\*        \*        \*

While permissible under the Speedy Trial Act, the delay in providing Perry necessary competency restoration services may reflect broader concerns.  Perry waited over 150 days from his designation to North Carolina to his arrival there.  On the one hand, Perry's treatment seemingly was deferred due to COVID-19-related delays as well as the U.S. Marshals Service's protocol for coordinating long-distance inmate transport.  On the other hand, there likewise appears to be some delay tied to the lack of bedspace in North Carolina and the inability of existing federal medical facilities to service all 94 judicial districts nationwide.

As courts, our charge is to enforce the Speedy Trial Act as written.  At the same time, we can fairly lament the seeming inability to provide more timely accommodations to Perry and, it appears, others.  *See United States v. Donnelly*, 41 F.4th 1102, 1104 (9th Cir. 2022) (per curiam); *United States v. Mouton*, No. 20-CR-00501, 2023 WL 3872206, at \*3–4 (S.D. Tex. June 7, 2023) ("From May 2021 until May 2023, [BOP's Chief of Psychological Evaluations] testified about these delays on 17 occasions to federal courts in nine states.  During this same period, she submitted written declarations about these delays on 35 occasions to federal courts in 23 states and the District of Columbia." (internal citations omitted)).  While worrisome, these issues are not before us.

B.  That leaves Perry's sentencing challenge.  Readers familiar with federal sentencing practices will be well aware that the Sentencing Guidelines in various places instruct district courts to increase a defendant's sentencing range if the defendant has one or more prior convictions for a crime of violence.  That is the case, for instance, in U.S.S.G. § 2K2.1(a)(4)(A),

which increases the base offense level for a defendant who engages in certain types of firearm offenses and has previously been convicted of a "crime of violence." The Guidelines, in turn, define a "crime of violence" to include any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 4B1.2(a)(1). Against this backdrop, the district court determined that Perry's conviction for aggravated domestic violence in Michigan, prohibited by Mich. Comp. Laws § 750.81a(3), was a crime of violence for purposes of U.S.S.G. § 2K2.1(a)(4)(A). Perry challenges that conclusion, an issue we review with fresh eyes. *United States v. Havis*, 927 F.3d 382, 384 (6th Cir. 2019) (en banc) (per curiam) (applying de novo review in resolving whether an offense is a crime of violence under the Guidelines).

All agree that Perry was convicted of committing felony domestic violence (aggravated) under subsection 3 of Mich. Comp. Laws § 750.81a. That provision criminalizes "commit[ting] an assault and battery" against a spouse, former spouse, domestic co-habitant, or intimate partner, and "inflict[ing] serious or aggravated injury upon [the victim] without intending to commit murder or to inflict great bodily harm less than murder." Mich. Comp. Laws § 750.81a(2)–(3). Our task is to determine whether the just-described offense "necessarily" involved the use of physical force, thereby satisfying U.S.S.G. § 4B1.2(a). *See Borden v. United States*, 593 U.S. 420, 424 (2021); *United States v. Doggart*, 947 F.3d 879, 887 (6th Cir. 2020).

The Supreme Court offers helpful directives on the point. It has interpreted the phrase "physical force" to mean "force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting 18 U.S.C. § 924(e)(2)(B)(i)); *see also United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc) (recognizing that § 4B1.2(a)(1) uses the same definition). And that manner of force, we are told, "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only *potentiality*." *Stokeling v. United States*, 586 U.S. 73, 84 (2019) (emphasis added).

Now compare that understanding with Perry's statute of conviction, starting with the phrase "assault and battery." Separated by "and," the terms "assault" and "battery" indicate a conjunctive requirement. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 116 (2012) ("Under the conjunctive/disjunctive canon, *and*

combines items while *or* creates alternatives."). What does it mean for a defendant to commit an assault *and* battery in Michigan? An assault is "either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Starks*, 701 N.W.2d 136, 140 (Mich. 2005) (citations omitted). Battery, for its part, is "an intentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." *Id.* (citations omitted).

We turn next to the statutory requirement that the assault and battery have the effect of "inflict[ing] serious or aggravated injury" upon a victim. Michigan defines "inflict" as "to lay on as a stroke, blow, or wound; to impose as something that must be suffered or endured; to cause to be borne." *People v. McBurrows*, 934 N.W.2d 748, 758 (Mich. 2019) (cleaned up). Infliction similarly requires "direct interaction with the victim." *Id.* As a result, one cannot inflict an injury indirectly by, say, providing drugs to an unknown victim through an intermediate dealer. *Id.*

That leaves the statutory phrase "serious or aggravated injury." Michigan courts have defined that manner of harm to be "a physical injury that requires immediate medical treatment or that causes disfigurement, impairment of health, or impairment of a part of the body." *People v. Frechette*, No. 360905, 2024 WL 302118, at *2 (Mich. Ct. App. Jan. 25, 2024) (quoting *People v. Norris*, 600 N.W.2d 658, 661 n.3 (Mich. 1999)).

Putting all these concepts together, it becomes evident that Perry's assault and battery offense necessarily involved the use of physical force. U.S.S.G. § 4B1.2(a). The battery component of the offense confirms as much. A battery, again, is an intentional and harmful touching which directly causes (inflicts) a physical injury requiring immediate medical attention or causing disfigurement or impairment of the body (a serious or aggravated injury). That plainly satisfies the Supreme Court's definition of physical force, which, recall, merely requires force "capable of causing" physical injury. *See Johnson*, 559 U.S. at 140. That being the case, Perry's offense is a crime of violence. *Cf. De Leon Castellanos v. Holder*, 652 F.3d 762, 766 (7th Cir. 2011) ("Battery causing bodily harm entails physical force because some sort of physical pain or damage . . . is required to convict . . . . *Johnson* held that so long as the force

involved is capable of causing physical pain or injury to another person [the] physical force requirement [is] satisfied." (cleaned up)).

Perry's response is to emphasize the "assault" component of the offense. He reminds us that we must look to the least culpable conduct criminalized by the elements of the statute. *See United States v. Thomas*, 969 F.3d 583, 584 (6th Cir. 2020) (per curiam). And to his eye, "the least culpable force that can be used" to commit assault under Michigan law "is an attempt to commit an offensive touching," which, in practice, may not cause a physical injury. Even if so, Perry could not have been convicted under § 750.81a(3) by committing an assault alone. Rather, he must have also committed a battery. We cannot read that term out of the statute, as Perry seemingly would have us do. *See Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 70 (2011).

Perry's reliance on *United States v. Morris*, 885 F.3d 405 (6th Cir. 2018), does not change our thinking. There, we held that Michigan's non-aggravated domestic violence offense was not a "crime of violence." 885 F.3d at 412. Note that the statute at issue used the disjunctive assault *or* battery. *See* Mich. Comp. Laws § 750.81. And Perry, of course, was convicted under a different statute, one that requires the commission of both an "assault and battery," making *Morris* a poor guide here.

*        *        *        *        *

We affirm Perry's conviction and sentence.